# WEIGHT v. BAILEY.

## No. 2618.   Decided April 2, 1915 (147 Pac. 899).

1. CONTRACTS—CONSTRUCTION—EXISTING LAW.   Parties to a contract are deemed to have in mind the law in force at the time the contract was entered into. (Page 589.)

2. REMAINDERS—SALE—CONSTRUCTION OF CONTRACT.   A testator devised and bequeathed property to his wife for life, with remainder to others.   Plaintiff, one of the remaindermen, conveyed his interest to defendant.   The contract provided that if, at the final settlement and distribution of the estate, his interest should be appraised at more than $6,000, defendant should reconvey the excess, but that, if the interest should be less than $6,000, the contract should be void.   Comp. Laws 1888, sections 4261-4264, which were then in force, provided that, at any time after final settlement of the accounts of the executor and administrator, final distribution should be made by the Probate Court, and that, if the court did not order such distribution, anyone interested in the estate might apply to have it made.   Subsequent sections provided for partition of the estate in kind to be made in connection with final distribution.   *Held* that, while partition could not be made during the life of the life tenant, final distribution could, and the value of the interest should be appraised as at the time of the final distribution made during the life of the wife.   (Page 589.)

3. LIMITATION OF ACTIONS—RUNNING OF STATUTE—FRAUD.   Where ·a contract for the sale of an interest in an estate provided that if, at final distribution, the interest should be appraised at more than $6,000, the purchaser should reconvey the excess, the right of the seller to have the contract, with which he was conversant, reformed on the ground of fraud or mistake, arose at the date of appraisal on final distribution, and the three years' limitation provided by Comp. Laws 1907, section 2877, subd. 4, for actions based on fraud or mistake, then began to run, notwithstanding the seller interpreted the contract as providing for valuation at partition after the death of a life tenant. (Page 591.)

4. LIMITATION OF ACTIONS—RUNNING OF STATUTE.   Where a seller of an interest in an estate deemed that valuation should be made at the death of the life tenant instead of at the time of final distribution, his rights, under the contract, ripened at the date of final distribution, and he could not many years

thereafter, on the theory that he could still sue on the contract, sue to reform it. (Page 592.)

5. LIMITATION OF ACTIONS—RUNNING OF STATUTE—EQUITY CASES. Where there is a statute of limitations, it will be applied in bar of the suit to reform a contract, notwithstanding the rule that, in the absence of statute, mere lapse of time does not bar any case of pure equitable jurisdiction. (Page 593.)

6. REFORMATION OF INSTRUMENTS—RIGHT TO. Reformation of an instrument will not be granted upon a probability or a mere preponderance of evidence; there being a presumption that the instrument correctly evidences the agreement of the parties.[1] (Page 594.)

7. REFORMATION OF INSTRUMENTS — ACTIONS — EVIDENCE — SUFFICIENCY. In a suit to reform a contract, evidence held insufficient to show that it was the result of fraud or mistake. (Page 594.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by Frederick H. Weight against John H.. Bailey.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*C. S. Patterson* and *A. A. Duncan* for appellant.

*Dey, Hoppaugh & Fabian* for respondent.

FRICK, J.

This was a proceeding in equity to reform a written contract and to recover judgment according to its terms, when reformed. The contract entered into is as follows:

''This agreement made and entered into at Salt Lake City, Utah, between John H. Bailey as first party and Frederick H. Weight the second party, both of Salt Lake City, Utah, witnesseth: That whereas said second party has this day by deed transferred and conveyed to the said first party an

---

[1] *Deseret Nat. Bank* v. *Dinwoodey*, 17 Utah 48; 53 Pac. 215; *Ewing* v. *Keith*, 16 Utah 312; 52 Pac. 4.

undivided one-fifth interest in and to the estate of John Bailey, deceased, for the consideration of six thousand dollars: Now, therefore, it is agreed and covenanted by and between the said parties hereto that if the said one-fifth interest conveyed shall at the time of final settlement and distribution of said estate be appraised by the appraisers then appointed at more than the said sum of six thousand dollars, then the said party of the first part hereby covenants and agrees to reconvey to the said party of the second part, his heirs or assigns, such portion of such estate so conveyed as shall be equal to the amount said one-fifth interest shall be appraised over and above said six thousand dollars, to be valued as per said appraisement, but if said interest is appraised for six thousand dollars or less, then this contract to be void. And for the faithful performance of this agreement the said parties hereto bind themselves and their heirs and assigns.

"Dated this 17th day of November, 1893.

"[Signed]   JOHN H. BAILEY.

"FRED H. WEIGHT."

The circumstances which induced the parties to enter into the contract, as developed at the trial, in substance, are: That in March, 1887, one John Bailey, father of John H. Bailey, the respondent here, and an uncle of the appellant, Weight, died, leaving a last will and testament in which he bequeathed all of his property to Elizabeth Bailey, his wife, for life, and after her death to his four children, one son, the respondent, and three daughters, and to the appellant, his nephew, in equal parts, one-fifth to each; that said will was duly probated, and said Elizabeth and the respondent were duly appointed executors in May, 1887; that said estate consisted almost entirely of real estate, and thereafter, in 1893, and before final or any distribution of said estate, the appellant and respondent entered into the agreement aforesaid; that, at the time said agreement was entered into, appellant conveyed by deed his one-fifth interest in said estate to respondent, and he, in consideration for appellant's interest, conveyed to him a certain parcel of real estate in Salt Lake City, and as additional consideration for said interest deliv-

ered to him the agreement aforesaid; that thereafter, in 1895, pursuant to an agreement entered into by respondent and his three sisters, the Probate Court of Salt Lake County, upon the application of the executors, made final distribution of said estate as follows: To the respondent, two-fifths; and to each one of the sisters, one-fifth—subject, however, to the life estate of the mother. The appellant was not a party to the agreement between the brother and sisters, and, when the proceedings for final distribution were pending, he appeared in said court and filed a formal protest against final distribution of said estate until after the death of Elizabeth Bailey, the widow. In such protest he set forth the claim that, under the agreement entered into between respondent and himself, final distribution should not be made until after the death of Mrs. Bailey, and that at her death the value of the one-fifth interest by him conveyed to respondent should be ascertained, and, if the same exceeded the $6,000 mentioned in the agreement, then respondent should reconvey to appellant the excess in value over and above said $6,000. The probate court, however, overruled the protest and distributed the estate, as before indicated. Nothing further was done until after the death of Elizabeth Bailey, the life tenant, which occurred in July, 1909. In that year, and after her death, appellant commenced an action to recover the excess in the agreement specified, but, in view that the court, in which said action was brought at the time the case was being tried, expressed the opinion that no right of recovery existed under the agreement as written, appellant suffered a voluntary nonsuit, and some time thereafter brought this action to reform said agreement and to recover upon it as reformed. In his complaint appellant alleges that the writing does not correctly evidence the agreement entered into between respondent and himself. The facts in that regard are alleged as follows:

"That either through a mistake of the scrivener, or the fraud and misconduct of the defendant, the contract between the plaintiff and defendant, hereinbefore referred to and set out in full, was not so drawn as to express the true and real intent of the parties, and the contract which had really been

entered into between them in this: That the clause 'if the said one-fifth interest so conveyed shall at the time of final settlement and distribution of said estate be appraised,' etc., as written in said contract, should have been 'if the said one-fifth interest so conveyed shall at the time of the partition of said property among the heirs, after the death of Elizabeth Bailey, be appraised,' etc., in order to conform to the true intent of the parties and the contract actually made by them. That this plaintiff, in reading said contract before signing the same, believed that the words used in such contract were synonymous with the words used by plaintiff and defendant in entering into their said agreement. That plaintiff was familiar with the provisions of the will of John Bailey, deceased, and knew that, under said will, no distribution of the separate interests of the heirs, by way of partition, could be legally had until after the death of Elizabeth Bailey. That, because of his belief that the legal effect of the words was the same as the words used by plaintiff and defendant in making their agreement for said contract, the plaintiff made no objection to the form of the contract, but signed and accepted the same in the form written.''

The appellant then further alleges that the one-fifth interest of said estate at the death of Mrs. Bailey was worth $7,180 in excess of the $6,000 mentioned in said agreement, and prays judgment for said amount.

It is not necessary to set forth more of the complaint, nor is it necessary to set forth the answer, both of which are quite long. It is enough to state here that respondent denied that the writing did not correctly evidence the actual agreement entered into between himself and appellant, and averred that the agreement correctly stated the agreement entered into between them. Respondent also pleaded the statute of limitations as a defense to the action.

Upon a hearing of the case the court found the issues in favor of respondent, and upon such findings made conclusions of law and entered judgment dismissing the action upon the merits. The appeal is from the judgment. Although the findings of fact are assailed in some particulars, we shall not set them forth; nor shall we state the evidence,

except where necessary in connection with the points decided.

While numerous errors are assigned, counsel have argued but three propositions, which, in substance, are: (1) That the court erred in not entering judgment reforming the contract referred to; (2) that the statute of limitations does not apply; and (3) that, even though the district court were right in holding that the evidence was insufficient to justify reformation, yet the court erred in not granting the prayer for judgment for the amount prayed for because, under a proper construction or interpretation of the agreement, appellant is entitled to such relief without reformation of the contract. We shall consider the foregoing propositions in the inverse order from that in which we have stated them, as that seems to us to be the more natural order to present the questions that arise upon the record.

We cannot agree with counsel's contention that, under the contract as written, appellant is entitled to prevail. The contract, as written, is clear and unambiguous with regard to the time when the value of the one-fifth interest **1, 2** transferred by appellant to respondent should be ascertained. The language of the contract is "at the time of final settlement and distribution of said estate." It is elementary that the parties to the contract must be deemed to have had in mind the law in force at the time the contract was entered into. The law in force in 1893 and thereafter, with respect to when final distribution of estates which were being administered in the probate courts of the then territory of Utah, is found in 2 C. L. U. 1888, sections 4261 to 4264, inclusive. Those sections, in substance, provide that, at any time after final settlement of the account of the executor or administrator, final distribution of the estate shall be made by the probate court. It is there also provided that, if the court does not order final distribution, any one interested in the estate may apply to the court to have it made, and the court must then proceed to make it, as directed by the statute. It must be assumed, therefore, that the final distribution mentioned in the contract in question was the one provided for by statute, namely, the one required to be made when the executors should render their final account and when the same was

settled, or at any time thereafter upon the application of any party interested in the estate. The mere fact that the widow, Mrs. Bailey, was, by the will, given a life estate in all of·the real estate of the testator, in no way affected ·the time when the final distribution provided by the statute should be made. This is made very clear by the Supreme Court of California, under a statute just like the one to which we have referred above, in the case of *Estate of Pritchett*, 52 Cal. 94. It is there shown that, in making the final distribution in 1895 in this case, the probate court merely complied with the provisions of the statute. That the distribution, as made, was legal and proper, see *Estate of Reith*, 144 Cal. 314; 77 Pac. 942. Appellant testified that he understood that by the use of the term "final distribution" was meant that such distribution should not be made until after the death of Mrs. Bailey. Appellant no doubt had in mind partition of the estate in kind made in connection with final distribution. Under the law as it then stood, partition of the several interests of an estate, or of a parcel of real estate, could be made in connection with final distribution. Where such is the case, however, it ought to have been done as provided in 2 Comp. Laws U. 1888, sections 4266 to 4277, inclusive. But, as pointed out by the Supreme Court of California in the *Reith* case, final distribution is not to be deferred under the statute until partition may be made. While in some cases final distribution and partition may be made in practically the same proceeding, yet such cannot be done where a life estate exists at the time of final distribution, except by agreement of all the interested parties, including the life tenant. We are of the opinion that, under the agreement as written, the time when the value of the one-fifth interest of appellant was to be ascertained was after the final settlement of the account of the executors, and not after the death of Mrs. Bailey. Appellant was therefore required to bring an action to reform the contract in question and to have it reformed as prayed for by him, before he could be given the relief demanded.

To his right to sustain such an action, responder t interposed the plea of the statute of limitations. This brings us to the second proposition argued by counsel, namely, that the

statute of limitations has no application to this proceeding. The particular provision relied on by respondent is as follows:

"An action for relief on the ground of fraud or mistake, three years; the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Comp. Laws 1907, section 2877, subd. 4.

This identical provision was in force when the contract in question was entered into and has been in force ever since. See 2 Comp. Laws U. 1888, section 3144, subd. 4; R. S. U. 1898, section 2877, subd. 4.

It will be noticed that the only matter which appellant sought to have reformed in the contract in question is the time that a certain act was done; he contending that it was agreed between respondent and himself that the act should not be done until after the death of Mrs. Bailey, while respondent contends that it was to be done at the time specified in the contract, and that the terms of the contract were executed as written and were written as agreed upon. We cannot see how we can escape the effect of the plea of the statute of limitations in this case. Suppose A. had made and delivered his promissory note to B., whereby it appeared that A. had agreed to pay B. the sum of $1,000 in "two" years from date. Suppose further that in two years from date A. went to B. and offered to pay the note in question with the accrued legal interest, but B. said, "I will not receive the money because your note is not due." A., however, insisted that the note was due, and, upon inspection of the note, B., for the first time, discovered that the time in the note was written "two" instead of "ten" years from date, as he had supposed. He, however, still refused to receive the money, whereupon A. made legal tender of the amount due, and the matter rested there until ten years had actually elapsed, when B. commenced an action to reform the note so as to make it read ten instead of two years, and prayed for reformation and for judgment after reformation for the amount specified in the note. A. now sets up the provision of the statute we have quoted as a bar to the action, and the only answer B. makes

is the one appellant makes in this case, namely, that the statute has no application. Does such an answer meet the question? We think not. If B. pleaded either fraud or mistake as a cause for reformation, a conclusive answer to such an action would be that he was fully advised of the facts constituting either, and what A. claimed with respect thereto at least eight years before he brought his action to reform the note. The statute, under those circumstances, would be a complete bar to B.'s action.

There is no essential difference between the supposed case and the case at bar. In both nothing was involved, except the time within which an act should be performed, and in both cases we assume the time was misstated in the written instrument either through fraud or mistake, which are the two elements named in the statute constituting the cause for relief. When the application for final distribution was pending in 1895, appellant was fully informed just what respondent claimed with respect to the time when, under the contract as written, the value of the one-fifth interest conveyed to him by appellant should be ascertained. Appellant then knew, in fact he concedes he always knew, what the language of the written contract was with respect to the time when the valuation should be made. He thus not only knew the language of the written contract, but he also knew just what respondent claimed the language meant, and that he disputed appellant's contention in the very particular he now insists the writing does not correctly express the agreement entered into between him and respondent. Notwithstanding this occurred in 1895, appellant remained silent until 1909, about fourteen years thereafter. To hold that, under these facts, the provisions of the statute relied on have no application, is to repeal the statute by judicial edict.

Appellant's counsel, however, contend that, under the authorities, an action to reform a written instrument may be brought at any time, while an action upon the instrument could be brought to enforce it. Among other cases cited are *Gardner* v. *California, etc., Co.*, 137 Cal. 71; 69 Pac. 844, and *Wabash Ry. Co.* v. *Lumley*, 96 Fed. 773; 37 C. C. A. 584. We refer to these two cases only because they

are the strongest cases cited by counsel. Neither of those cases, however, nor any cited by counsel, have any application to the facts here. When it is kept in mind that the only matter involved here is the time when a certain act should be performed under the contract, no confusion can arise. In both of the cases last cited, the right to sue upon the contract still existed. This is clearly pointed out in *Wabash Ry. Co.* v. *Lumley.* In that case a release which was obtained by fraud or misrepresentation stood in the way of the right to recover. It was sought to reform this release to conform to the agreement of the parties. This was permitted, and it was pointed out in that case that, inasmuch as the right still existed to sue upon the original cause of action, therefore the right to reform the release also continued to exist. The distinction between such cases and the case at bar is obvious. To contend that the right to maintain an action in the teeth of our statute of limitations continued for the reason that, as appellant interpreted the terms of the contract, he was not required to sue until after Mrs. Bradley's death, is merely begging the question. Under the proper interpretation of the language used in the contract, appellant was required to claim his rights at the time of the final distribution of the estate. If the contract did not express the agreement made by respondent and himself, he then had full notice of that fact, and hence was required to bring the action to reform the contract so as to make it evidence the agreement as made. Such an action he was required to bring within three years from the time he learned of all the facts constituting the fraud or mistake pleaded by him.

Nor do the cases cited by appellant's counsel, to the effect "that mere lapse of time does not bar any case of purely equitable jurisdiction," have any application to the facts of this case. Among other cases cited by counsel to that effect, we refer to *Wall* v. *Meilke*, 89 Minn. 232; 94 N. W. 688, and *Sicher* v. *Rambousek*, 193 Mo. 113; 91 S. W. 68. In the Minnesota case it is made to appear that there was no statute of limitations upon the question involved in that state; and in the Missouri case the facts were not dis-

covered in time to make the statute available. The foregoing cases were both correctly decided upon the facts. Among the cases that are in point here are *Carter* v. *Leonard*, 65 Neb. 670; 91 N. W. 574, and *Stark* v. *Zehnder*, 204 Mo. 442; 102 S. W. 992. In both of those cases it is held that the time within which an action to obtain relief against mistake or fraud must be commenced is within the time fixed by the statute, and that the statute begins to run from the time the aggrieved party acquires knowledge of the facts constituting the fraud or mistake. We are clearly of the opinion that both upon principle and authority, under a statute like ours, the right of action was barred long before this action was commenced.

But, if it be assumed that we are in error in the foregoing conclusion, yet there is still another reason why this appeal cannot prevail. The district court found against the appellant upon the facts. That is, the district court **6, 7** found that appellant's evidence was insufficient to authorize a reformation of the contract. We think the court's findings in that regard are entirely sound. The only witnesses to the agreement who testified (indeed, the only ones who were living at the time of trial) were appellant and respondent. While it is true that appellant, in positive terms, testified that he and respondent agreed that the value of the one-fifth interest conveyed by him should be ascertained after and not before Mrs. Bailey's death, respondent testified just as positively that Mrs. Bailey's death was not spoken of or considered at all. While it is further true that appellant says that he carefully read over the contract before signing it, and that he interpreted the language to mean that the valuation of the interest conveyed by him should be made after Mrs. Bailey's death, and that he would not have signed the contract had he understood it to mean that the valuation could be made before, respondent is equally positive that he understood it to mean just what the language imports, and that he would not have signed it, had it meant what appellant contends it means. It is also true that there are certain circumstances which, to some extent, corroborate appellant's testimony, while, upon the other hand, there was certain conduct

upon his part which lends some color to respondent's contention.   A comprehensive view of the whole evidence does not establish appellant's claim with that degree of certainty which, by all the courts of equity, has always been held essential to authorize the reformation of a written instrument upon the ground of fraud or mistake.   In order to authorize a court to reform a written instrument, the presumption that the instrument correctly evidences the agreement of the parties, where reformation is resisted, must be overcome by proof which is clear and convincing.   As is well said by the author in 2 Pomeroy, Eq. Jur. (3rd Ed.) section 859:

"Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error."

We refer to the numerous authorities cited in a footnote by the author in support of the foregoing quotation.   This court is also committed to that doctrine.   See *Deseret Nat. Bank* v. *Dinwoodey,* 17 Utah, 48; 53 Pac. 215, and *Ewing* v. *Keith,* 16 Utah 312; 52 Pac. 4, and cases cited in both cases. In no view, therefore, is the evidence of such a character as to justify us in overturning the findings of the district court upon the record presented for review.

In what we have said, we have not considered the question urged upon us by respondent's counsel, namely, that inasmuch as appellant, upon the trial, disclaimed all fraud on the part of respondent, the mistake, at most, is only one of law, or is one of misinterpretation of the meaning of words on the part of appellant, and thus not a proper subject of reformation.   Upon that question we express no opinion.

The judgment is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.