## NORDFORS v. KNIGHT et ux.

No. 5621.   Decided October 8, 1936.   (60 P. (2d) 1115.)

*T. A. Hunt,* of Richfield, for appellants.
*Henry E. Beal,* of Richfield, for respondent.
EPHRAIM HANSON, Justice.

Some time in the early part of March, 1930, the plaintiff negotiated with defendant for the purchase of a tract of land consisting of four 40-acre tracts owned by defendant in Sevier county. It was agreed that plaintiff was to pay $3,500, half down and the other half a year later. Plaintiff had a Mr. Clark draw up a deed and an escrow agreement. The down payment of $1,750 was duly made and the papers placed in escrow with the bank at Richfield, Utah. Plaintiff took immediate possession of the land which he thought was covered by the deed. He continued in undisputed possession until in April, 1933, when a Mr. Fairbanks attempted to pasture some cattle on a part of the meadow land. Defendant had then discovered that the deed he gave plaintiff did not include all of this meadow land and attempted to sell part of it to other parties. As a result a survey was made and plaintiff for the first time discovered that the description contained in his deed did not include approximately 18.4 acres of this meadow land. He had a survey made of this 18.4 acres by the engineer and brought this suit against defendants to compel them to convey this acreage to him. It is plaintiff's contention that he bought and defendants sold to him all the meadow land which would include this 18.4 acres and that both parties assumed it was contained in the description contained in the deed. The lower court found in favor of plaintiff and entered its decree directing defendants to execute and deliver to plaintiff a warranty deed to the 18.4 acres.

A motion for a new trial was filed and argued. It appeared from the evidence that Sevier county owned a portion of the north end of this 18.4-acre tract and one Stewart owned a portion of the south end of said tract. When this was brought to the trial court's attention on the argument for a new trial, the trial court entered an amended decree reforming the deed so as to include only that portion of the said 18.4-acre tract as was not owned by Sevier county and Stewart, which left a 9.34-acre tract which would be in-

cluded in the reformed deed, and defendants were ordered to execute a deed to this 9.34-acre tract.

The defendants first contend that evidence is not sufficient to justify a finding that the lands described as the 18.4 acres were omitted from the deed and contract through mutual mistake of plaintiff and defendant and that the findings of fact are not sufficient to support the decree requiring the defendant to convey to plaintiff the land described in the amended decree. A number of cases involving the question of reformation of a written agreement because of mutual mistake have been before this court. Bearing upon the character and kind of proof that a party must produce to obtain reformation of a written contract the rule deducible from these cases is stated in *George* v. *Fritsch Loan & Trust Co.*, 69 Utah 460, 256 P. 400, 403, as follows:

"The law is well settled in this and in other jurisdictions that a written contract will be reformed to express the agreement of the parties where the proof of the mistake is clear, definite, and convincing, and where the party seeking the reformation is not guilty of negligence in the execution of the contract nor of laches in making timely application for its reformation."

See, also, *Cram* v. *Reynolds*, 55 Utah 384, 186 P. 100; *Wherritt* v. *Dennis*, 48 Utah 309, 159 P. 534; *Weight* v. *Bailey*, 45 Utah 584, 147 P. 899; *Deseret National Bank* v. *Dinwoodey*, 17 Utah 43, 53 P. 215.

While the rule is thus definitely stated, whether the proof in any particular case meets its requirements is a matter which must be determined from a consideration and weighing of all the facts and circumstances, and the legitimate inferences arising therefrom, appearing in each case as it arises.

It is not disputed in this case that plaintiff had no prior acquaintance with the land he sought to purchase from defendant; that he wanted to buy some pasture land; that the land in question was situated about a mile from defendant's home; that plaintiff came to defendant's home to discuss the matter of buying the land and

plaintiff and defendant went to the land to look it over; that the only land of any value was certain meadow land, variously estimated at from 40 to 50 acres, located in a flat lying to the east and south of a certain canal; that the balance of the ground to be conveyed was practically worthless; that this entire meadow land lay in one piece with no marks of any kind to designate any boundaries or any section or meridian lines; that defendant actually owned, at the time, meadow land to the west of the meridian line; that no survey was made at the time of purchase; that defendant himself did not know exactly where the boundary lines of the four 40's were; that after the sale plaintiff took possession of all the meadow land and used it for a pasture, paid taxes thereon and was not disturbed by defendant or any one else until about three years later, when Fairbanks attempted to pasture cattle on a certain portion of the land. It further appears from the engineer's testimony that the meridian line, when extended by him, severed this meadow land so that 18.4 acres thereof were to the west of the meridian and outside of the boundaries of the land described in defendant's deed to plaintiff, the meridian line forming the west boundary of the land so described. This 18.4 acres was a narrow strip of land 2,640 feet long and about 266 feet wide, being somewhat wider at the center than at the ends. It also appears, without dispute, that after plaintiff and defendant had come to an understanding defendant gave plaintiff an abstract of title which covered the four 40's, and plaintiff had the deed and escrow agreement made up.

Plaintiff testified that before the deal was closed he and defendant went upon the ground and stepped off the meadow land at its widest and narrowest places and calculated the approximate acreage of meadow land. They estimated there were about 40 acres. The defendant pointed out the entire meadow land as being included in the land he was selling, and stated that the line ran upon the hill to the west of the meadow land. He also told plaintiff about the people to whom he had rented the pasture and the cattle they had pas-

tured on the land. No other part of the tract was seen or measured, as the rest of the land was considered of no value. No boundary lines were pointed out, and plaintiff had no knowledge whatsoever as to their location. When they stepped off the pasture land they simply stepped off the ground covered by grass, the grass being their only guide in measuring distances. Plaintiff further testified that while they were on the ground defendant told him the four 40's embraced this meadow land. Later, when the dispute first arose, defendant again told plaintiff that it did not make any difference where the ground was because plaintiff was entitled to all the ground down in this flat. Plaintiff's evidence also tended to show that defendant thought he owned all of this meadow land and was not aware that either the county or, Stewart claimed portions of it until long after the plaintiff took possession.

Defendant admits that he and plaintiff went to look over the land, but denies they stepped off the pasture land or that he pointed it out as being included in the four 40's he was selling. According to defendant, about all they did was to walk onto the ground about 100 yards and then discussed the price. Nothing was said about boundary lines. While at defendant's home, defendant stated he did not know where the boundary lines were. Defendant testified that the ground west of the meridian line was then covered by a mortgage, but there is no evidence that he ever mentioned the mortgage to plaintiff.

We deem it unnecessary to make a further statement of the evidence, as we think the evidence is clear, definite, and convincing that the parties intended to include this 18.4 acres of pasture land in the sale. The mere fact that defendant denies some of the material matters testi- ■ fied to by plaintiff does not prevent the evidence from being clear, definite, and convincing. *Davidson* v. *Bailey,* 53 Okl. 91, 155 P. 511; *Karr* v. *Pearl,* 212 Ky. 387, 279 S. W. 631. It rarely happens that the testimony is undisputed and uncontroverted.

It seems apparent to us that plaintiff would not be making a blind buy, such as defendant would have us believe. What he wanted was pasture land, and the only land of any value for that purpose or any other purpose was this meadow land. The natural and usual thing would be for the parties to do just as plaintiff testified; to go upon the land, determine the amount of land which had value, and then agree on the price. There was nothing whatever on the ground to indicate that this pasture did not comprise one entire tract or that defendant might not be selling it all. Neither party knew where the meridian line ran or where the west boundary of the four 40's was. The evidence sustains the conclusion that defendant thought the four 40's included all this meadow land. The fact that there was a mortgage on a part would not tend to controvert such conclusion. If plaintiff was only getting to the meridian line, then he would be paying $3,500 for about 22 acres of uninclosed pasture land, about $160 an acre.

Defendant contends that because the description of the land in the deed runs in straight lines, plaintiff must have known that it did not describe the 18.4 acres which were described by broken lines and angles. There is no merit to this contention, as plaintiff's position is, and the evidence shows, that both he and the defendant thought the four 40's included this 18.4 acres. Hence there would be no separate description of this meadow land.

A case containing somewhat similar facts, but in which the question of the sufficiency of the evidence was not passed upon for want of proper assignments of error, is the case of *Marks* v. *Taylor*, 23 Utah 152, 153, 63 P. 897; *Id.*, 23 Utah 470, 65 P. 203.

It further appears that plaintiff did not pay the second sum of $1,750, but paid the sum of $1,250 and interest thereon. The evidence is undisputed that about the first of January, 1931, plaintiff told defendant he would not go through with the deal, as the land was not worth the price agreed to be paid; that plaintiff would rather lose what he

had paid and let defendant take the land back and sell it for what he could get out of it. Defendant said he wanted to be fair, and finally agreed to accept $1,250 and interest in full settlement. About the time that the final payment under the contract was due, plaintiff paid defendant the $1,250 and interest. Defendant then accompanied plaintiff to the bank and turned over the contract, deed, and abstract of title to plaintiff and thereafter made no further claim upon plaintiff until this suit was commenced when he counterclaimed for the $500 difference, claiming that the agreement to accept the reduced amount as payment in full was without consideration.

The trial court found that the parties had substituted the new agreement to accept the $1,250 and interest for the prior agreement to pay $1,750 and interest, and that a cancellation of the difference of $500 was thereby effected, defendant accepting the sum of $1,250 in full payment, settlement, and satisfaction and surrendering the written agreement, deed, and abstract of title. The defendant was denied any relief under his counterclaim.

We think the evidence fully sustains the findings of the court. It may be conceded that as a general rule a consideration is necessary to sustain a contract modifying an existing contract. But as stated in 13 C. J. 592, § 607,

"Where a modified agreement has been fully executed it will not be disturbed for a want of consideration."

See, also, *Vigelius* v. *Vigelius,* 169 Wash. 190, 13 P. (2d) 425; *Davis* v. *Culmer,* 221 Mo. App. 1037, 295 S. W. 803. The modifying agreement in this case was fully performed, and the deed, abstract, and original agreement delivered to plaintiff by defendant himself. The deal was finally closed and considered closed by both parties for over two years. The whole transaction showed an intent, which was fully and completely carried out, to perform and accept performance under the new agreement and a mutual abandonment of the old agreement. It must follow that defendant, under

the facts of this case, cannot now claim that the agreement thus performed is a nullity for want of consideration.

The judgment of the lower court is affirmed, with costs to respondent.

ELIAS HANSEN, C. J., and FOLLAND, MOFFAT, and WOLFE, JJ., concur.