# ROSENBRAUGH v. BRANCH.

No. 7252.   Decided December 23, 1949.   (213 P. 2d 333.)

See 53 C. J., Reformation of Instruments, sec. 206, 208. Reformation of instruments as to mutual mistake, see note, 71 A. L. R. 1307. See, also, 45 Am. Jur. 617.

*Arthur Woolley,* Ogden, *Howell, Stine & Olmstead,* Ogden, for appellant.

*Lowe & Lowe,* Ogden, for respondent.

McDONOUGH, Justice.

The question for decision is whether the evidence adduced is such as to support the judgment which in effect reformed the promissory note sued upon and also the contract pursuant to which the note was executed and delivered. Plaintiff administrator sued to recover judgment for an alleged balance on a promissory note dated January 23, 1947, and made payable to the order of decedent. From a judgment for defendant, the plaintiff appeals.

Defendant admitted the execution of the note, but asked for reformation of a contract for the sale of a brokerage business·dated December 9, 1946, on the ground of mutual mistake and also reformation of the note sued upon dated January 23, 1947, which was given for the balance of the contract indebtedness. The contract stated the purchase price for the sale of the brokerage business as the sum of $6,600. By its terms the decedent sold the business, good will and office furniture, and promised to hold himself available for consultation and advice during the year 1947 with respect to the business. Wesley D. Brown, the seller, died on July 30, 1947. By affirmative defense the defendant alleged that in the contract of December 9, 1946, there was erroneously inserted as the purchase price the sum of $6,600 when the purchase price should have been stated as the sum of $3,943.93; and that the agreed purchase price was to be a figure representing the average of annual gross receipts of the brokerage business for five years, from 1942 to 1946 inclusive. There is no dispute as to the fact that defendant paid the sum of $3,943.93, and that he refused to pay any additional amount. After making the contract of sale, defendant made a down payment of $2,500 as re-

quired by the terms of the contract, so that the note for $4,-100 was intended to cover the balance of the purchase price.

The execution of the note in the sum of $4,100 was admitted. Defendant himself did not testify, presumably because of the interposition of the "dead man's statute" (104-49-2(3), U. C. A. 1943) was anticipated, should his testimony be proffered. The evidence produced by defendant was not controverted. The principal assignment of error is that there was not sufficient competent evidence to show any mutual mistake, nor to show any actual agreement or meeting of the minds differing from that expressed in the written contract. The written contract of sale does not indicate the basis on which the sale price was computed.

The evidence produced was both oral and documentary. Three witnesses testified. Mr. Horsley, who shared the office with decedent, testified that in the latter part of December, 1946, decedent told him after introducing defendant to him, but out of the presence of defendant, that he had signed a contract with defendant by the terms of which he (decedent) was selling the brokerage business to defendant, and that decedent

"said that they had gone back and were taking the earnings of the brokerage company during the past five year period and then dividing them by five to get them on a five year average, and on that basis he was selling the business to Mr. Branch."

Mr. Horsley also testified that Mr. Brown stated that he had decided to sell the business because of ill-health, and that Mr. Branch would be sharing the office with the witness.

The second witness was the office girl who worked for both Mr. Brown and Mr. Horsley. She testified that around the latter part of December 1946 decedent asked her to take from the books the figures on the income for the years 1942 to 1946 and then get the yearly average for five

years; that she believed decedent told her to take the figures from the "bank column" (which figures included not only the brokerage business income, but also items of income including salary, dividends and rents which had nothing to do with the brokerage business). She identified the computation she had made. The five year average thus computed was slightly in excess of $6,600. She did not know and was not advised as to the purpose for compiling those figures.

The third witness, Mr. Corkey, was the accountant whose firm had compiled decedent's income tax returns, and who had audited the books of the brokerage business for decedent. He identified the income from the brokerage business on a five year average as $3,943.93. The brokerage books were also introduced in evidence. They clearly show that there was included in the "bank column" of the books items of income for salary received by Mr. Brown and other items not a part of the income of the brokerage business. No contention is made that the mathematical computation presented by the auditor was incorrect.

Appellant concedes that where due to mutual mistake of the parties the writing executed by them is materially at variance with the identical intention of the parties as to terms to be embodied in the proposed written instrument, a decree may be obtained to cause the writing to conform to their intention. However, he contends that in the instant case the evidence adduced is not of such character as to satisfy the requirement of being "clear, satisfactory, and convincing" or "clear and distinct" as required by *Weight* v. *Bailey*, 45 Utah 584, 147 P. 899, and *Cram* v. *Reynolds*, 55 Utah 384, 186 P. 100. He further contends that even assuming that the evidence is clear and convincing as to mistake upon the part of plaintiff's intestate there is no evidence that defendant was laboring under the same misapprehension. Hence, he argues, there is no evidence of a meeting of the minds of the parties as to the terms of the purported oral agreement, in

consequence of which there being no contention of fraud upon the part of plaintiff's intestate, rescission and not reformation is the proper remedy.

The second recited contention needs but brief consideration. The testimony of witness Horsley relative to his conversation with decedent, Brown, clearly imports that the mutual understanding of the parties was that the purchase price was to be as therein detailed, and not merely that Brown had arrived as an asking price by the procedure described.

The substantial question confronting us is whether the evidence is "clear and convincing" as to the terms of the agreement between the parties thereto, which terms were intended to be embodied in the writing subsequently executed, so as to overcome the presumption that the written instrument correctly evidences such agreement. As to the meaning of the phrase "clear and convincing," much has been written. We shall advert to a few typical statements as to the content of that expression.

In the case of *Forrester* v. *Cook et al.*, 77 Utah 137, 292 P. 206, 209, it is said:

"* * * A party seeking relief by reformation of a contract which is presumed to contain all the terms agreed upon must establish a mutual mistake by evidence that is clear, satisfactory, and convincing, and not by a mere or a bare preponderance of the evidence (*Cram* v. *Reynolds*, 55 Utah 384, 186 P. 100), unless a fair preponderance of the evidence clearly and satisfactorily convinces the court of the error. * * *"

Compare that statement of this court with that of the Supreme Court of Nebraska in the case of *In re Peterson*, 76 Neb. 652, 111 N. W. 361, 362, wherein the contention was made on rehearing that all that was required to establish a contract to bequeath was a preponderance of the evidence, and that such evidence is sufficient in any civil action. The court in answer to such argument stated:

"* * * It may be said, however, that while it is true that a preponderance of the evidence is all that is required of the plaintiff in any civil action, yet the nature of some cases is such that the probative force of testimony may be weakened or counter-balanced to some extent by the existence of legal presumptions or other circumstances which may affect its credibility. Where it is sought to establish a resulting trust by parol evidence, or where it is sought in effect to evade the statute of wills or the statute of frauds in like manner, or where conveyances have been made by parties in failing circumstances to near relatives, the circumstances of the case require that the proof be clear and satisfactory in order to overcome the presumption which the circumstances raise. The nature of the case demands a closer scrutiny of the evidence than in an ordinary controversy; but if, after testing it by these canons it preponderates in favor of the plaintiff it is sufficient to justify and sustain a finding in his favor. * * *"

The Supreme Court of Iowa, in *Good Milking Machine Co.* v. *Galloway*, 168 Iowa 550, 150 N. W. 710, 712, which was an action to reform a written contract of sale, in discussing the expression "clear and satisfactory," said:

"Evidence is for the purpose of conveying to the mind a knowledge of the existence or nonexistence of disputed facts. When the evidence is such that the mind readily reaches a satisfactory conclusion as to the existence or nonexistence of a fact in dispute, then the evidence is, of necessity, clear and satisfactory."

In the recently decided case of *Greener* v. *Greener*, 116 Utah 571, 212 P. 2d 194, 204, this court speaking through Mr. Justice Wolfe said:

"That proof is convincing which carries with it, not only the power to persuade the mind as to the probable truth or correctness of the fact it purports to prove, but has the element of clinching such truth or correctness. Clear and convincing proof clinches what might be otherwise only probable to the mind." See also, *Nordfors* v. *Knight*, 90 Utah 114, 60 P. 2d 1115.

With these criteria in mind, we examine the testimony hereinabove set forth.

As stated hereinabove, the testimony of the witness Horsley clearly evidences that the oral understanding reached

between decedent, Brown, and the defendant was that the purchase price to be inserted in the written agreement was the average earnings of the brokerage business for the five year period mentioned. It is clear and undisputed that the figure inserted was substantially the five year average of the total deposits of decedent Brown, which included all of the brokerage receipts plus other substantial items of income wholly unrelated to the brokerage business. It is likewise undisputed that the average earnings of the brokerage business were as claimed by defendant. Does such evidence implant conviction in the mind that a mutual mistake of fact had been made as to the purchase price of the business in drafting the written instruments?

The testimony of Mr. Horsley was uncontradicted. It was believed by the trial court and made the basis of one of its findings. We know of no reason why it should not be given full credence by this court. But should one indulge in the assumption for the moment that Mr. Horsley misunderstood Mr. Brown and that what was said or meant was that the five year average spoken of in the conversation testified to was the average of Mr. Brown's total income, the unreasonableness of such assumption is immediately apparent. It is wholly unreasonable to assume that defendant would agree to take as a basis for establishing the price he was to pay for the brokerage business, the investment income and salary of the seller which could have no conceivable relation to the value of the business he was buying, even though the purchase included office furniture and supplies on hand and the seller's promise to hold himself available for consultation relative to the business during the year 1947.

As to the last two items mentioned, it is reasonable to infer that since the decedent occupied a one-room office with Mr. Horsley, the furniture and supplies could have no substantial value. As to the consultation service of the decedent, it is hardly reasonable to assume that if the agreed

value of the business without such service was the average receipts thereof over a five year period, that the purchaser would be willing to add 65% to such a price for the privilege of consulting with a man too ill in his own opinion to carry on the business himself.

Appellant asserts that despite the testimony of Mr. Horsely, such testimony taken with that of the office girl is not sufficient to establish the oral agreement. Much is made of the fact that the office girl stated that she computed the bank column average in the latter part of December while the contract bears date December 9th. It is therefore argued that the five year average found by such employee could not have been employed in drafting the contract. However, her testimony is not as explicit as such argument assumes. After answering that she could not remember the exact date upon which she made the computation, when asked to approximate it she answered that she "imagined it was in the latter part of December." This answer by the witness is not such as to weaken the strong inference that the figure arrived at by her was the one thought by the parties to be that contemplated by their oral agreement.

Some point is made of the fact that defendant did not proffer his own testimony in support of the allegation of the answer as to the terms of the oral agreement. While he might well have done so, the testimony would have been so palpably objectionable that we do not feel inclined to draw any inference from his failure to make what would in all probability have been a futile gesture.

We find the evidence such as to be within the recited rule and to support the findings and judgment below. The judgment is affirmed. Costs to respondent.

PRATT, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.