307 P.2d 620

Stan NAISBITT, Plaintiff and Respondent,

v.

Parley HODGES and Theora Hodges,
Defendants and Appellants,

J. W. Neil and Ellen F. Neil, his wife,
Defendants.

No. 8531.

Supreme Court of Utah.

Feb. 25, 1957.

David H. Bybee, Salt Lake City, for appellants.

Bullen & Olson, E. F. Ziegler, Logan, for respondent.

McDONOUGH, Chief Justice.

Defendants appeal from a decree of the district court whereby a deed was reformed in accordance with the contention of the plaintiff. The trial court also adjudged that plaintiff had acquired title to the disputed tract by adverse possession.

From a review of both the record and the findings of the lower court, the facts are as follows:

In February, 1916, the defendant, Parley N. Hodges, secured from the United States Government a patent to Lot Five, Section Thirty-three, Township 14 North of Range 5 East, Salt Lake Meridian, containing 16.51 acres. Bear Lake abutted this land on the north, and a government survey in 1875 had established the meanderline of the lake as the north boundary of the said lot 5. At some distance to the south of lot 5, a state highway ran parallel to the lake. From the highway, a road extended in a northeasterly direction to the shore of Bear Lake, cutting lot 5 into two parcels—one to the east of the road and one to the west. (See the attached diagram).

118

Prior to the patent, Hodges Land, Live-stock and Milling Company, a corporation, had agreed to sell and J. W. Neil, plaintiff's predecessor in interest, had agreed to buy all the land owned by the company to the east of the road to Bear Lake bounded on the north by Bear Lake and on the south by the State highway. The east boundary was located some distance to the east, and is not important in this dispute. This parcel of land totaled 43 acres, and included the tract which is that portion of lot 5 to the east of the road to Bear Lake (referred to as Tract I in the diagram). Neil took possession of the entire acreage and used the parcel for farming. During the year 1916, Neil and Hodges Land, Livestock and Milling Company discovered that the deed from the company to Neil did not include Tract I, since the ownership of this area was vested by patent in Parley N. Hodges, the defendant. Therefore, in order to fulfill its agreement with Neil, the Hodges Land, Livestock and Milling Company paid a sum of $619 to Parley N. Hodges in consideration for his transferring Tract I to Neil.

On August 14, 1916, Parley N. Hodges gave a deed of Tract I to J. W. Neil, by a description which is the basis for the suit to quiet title. In this deed, Hodges described the property as:

"Commencing at the North-east corner of Lot 5 Section 33 Township 14 North Range 5 East Salt Lake Meridian, thence South 1 chain and 15 links, thence West 13 chains and 15 links, thence North 32° 15′ East 6 chains and 85 Links, thence East along lake shore 70° South 10 chains 98 links to the place of beginning. Containing 5 and 1/5 acres more or less."

The correct distance of the east boundary of Tract I as shown on the diagram is 209.88 feet, and not 1 chain and 15 links (75.9 feet) as stated in the description. The distances of the remaining boundaries are correct. Circumstances surrounding the conveyance indicate that the intention was to deed all of lot 5 east of the road to Bear Lake (being Tract I). Neil stated in his deposition, introduced as evidence by stipulation, that he owned all of the land east of the road, bounded by Bear Lake on the north and by the state highway to the south. The land between the highway and the south boundary of lot 5 had been secured by Neil under the original agreement and conveyance from Hodges Land, Livestock and Milling Company. When Neil, also in 1916, conveyed his land to the south and to the east of Tract I to Ideal Beach Amusement Company, he used a description which was coterminous with the description in the deed from Parley N. Hodges to Neil. Apparently, and according to his deposition, Neil understood that there was no in-

tervening parcel of land between his north Tract I and the tract which he owned adjoining Tract I on the east and south. The defendant apparently understood the same thing, for he and Neil went on the land many times, agreeing that the property to the east of the Bear Lake road belonged to Neil, the defendant owning to the west of the road. However, the defendant was still record owner of the south 130 feet of lot 5 which was excluded by the description used in the original conveyance.

J. W. Neil conveyed Tract I to O. H. Nelson in 1939 by the same erroneous description under which it was conveyed to him. Nelson, the record shows, testified that the defendant never objected to Nelson's possession of the entire tract. Nelson stated that he and the defendant agreed that defendant owned nothing east of the road to Bear Lake and that the south boundary of the disputed tract and the north boundary of the Ideal Beach property were coextensive. The defendant helped Nelson construct a water line along the south boundary of the disputed tract; that is, within the 130 foot strip claimed by the defendant. Nelson also rented the entire Tract I and other parts of nearby property he owned to the defendant for grazing purposes in consideration for the defendant's keeping the fence in repair.

Delbert Hansen, a witness who leased Tract I from Nelson in 1948, testified that the defendant made no objections to farming or grazing operations carried on within Tract I by the witness.

In 1953, O. H. Nelson conveyed the tract by the same erroneous description to Stan Naisbitt, the plaintiff in this action. Naisbitt purchased the entire tract when negotiations with the defendant (who at that time had a lease) regarding the establishment of a summer resort fell through. Regular and substantial improvements were made by the plaintiff, to which the defendant made no objection, and Naisbitt also believed from his relationship with the defendant that the defendant owned nothing east of the road to Bear Lake. After a survey in 1953, however, the defendant claimed ownership of the south 130 feet of land of Tract I. In the tax assessments for the prior years, there was no assessment for any parcel between Ideal Beach to the south and the tract to the north. It was assumed by the county assessor that the boundaries were coterminous; for the descriptions in the grants from Neil were coterminous.

The lower court found for the plaintiff and reformed the contract to include the disputed 130 foot strip in the original conveyance. It also held that the plaintiff had title by adverse possession.

The determinative question is whether the defendant and the original grantee, Neil, in describing land to the exclusion of the south 130 feet, were mutually mistaken in the description as to the land they intended to be conveyed.

There are numerous cases in this jurisdiction dealing with reformation of an instrument on the ground of mutual mistake. The guiding criteria are well established. Mutual mistake of fact may be defined as error in reducing the concurring intentions of the parties to writing. Peterson v. Paulson, 24 Wash.2d 166, 163 P.2d 830. Evidence necessary to substantiate the mutual mistake of fact must be clear, definite and convincing, and the party seeking reformation should not be guilty of negligence in the execution of the contract or deed or laches in making timely application for its reformation. This principle has consistently been applied in equity throughout the reformation of instrument cases. Sine v. Harper, 118 Utah 415, 222 P.2d 571; Gray v. Gray, 108 Utah 388, 160 P.2d 432; Nordfors v. Knight, 90 Utah 114, 60 P.2d 1115; George v. Fritsch Loan & Trust Co., 69 Utah 460, 256 P. 400; Cram v. Reynolds, 55 Utah 384, 186 P. 100; Wherritt v. Dennis, 48 Utah 309, 159 P. 534; Weight v. Bailey, 45 Utah 584, 147 P. 899; Deseret National Bank v. Dinwoodey, 17 Utah 43, 53 P. 215; Ewing v. Keith, 16 Utah 312, 52 P. 4.

In Nordfors v. Knight, supra, the evidence was held sufficient to sustain a decree reforming a deed on grounds that both grantors and grantee intended that the description should cover an entire meadow land claimed by the grantee, a part of which was not included. Cf. Peterson v. Paulson, supra.

The sufficiency of the evidence in this case cannot be doubted when viewed in its entirety and in light of the findings of the trial court. The record discloses that no objection to the possession and use of the south 130 feet was raised by the defendant from 1916 to 1953; that defendant did not question nonassessment of taxes on the claimed 130 foot strip until after the survey in 1953; that the plaintiff and his predecessors in interest all took possession and made substantial improvements; that J. W. Neil thought, and in conversation with defendant confirmed, that Neil owned all the property east of the road to Bear Lake; that Neil's conveyance to Ideal Beach of a large portion of this property was by boundary description coterminous with the assumed Tract I retained by him; that the county assessor's office had no record of any intervening parcel between that owned by Ideal Beach and the tract in dispute; that the defendant had leased the land within the area from O. H. Nelson, according to the latter's testimony; that no objection was voiced by defendant to plain-

tiff's possession or the possession of plaintiff's predecessors until after a survey by which defendant was found to be record owner by virtue of the original erroneous description; and that the description did not close, and which by moving the south boundary 130˜ feet north forced the west boundary not only to overlap the road which the defendant had dedicated to the county, but also to extend into several lots on the west side of this road which the defendant had subsequently conveyed to third parties.

■ The evidence is sufficiently clear and convincing to support the conclusion that the original parties to the deed in controversy intended to include the 130 foot strip in the conveyance of Tract I, but that in describing said property in the deed they made a mutual mistake of fact. The case of Sine v. Harper, 118 Utah 415, 222 P.2d 571, 580, presents the analysis in an equity review of what is "clear and convincing" evidence necessary to reform a deed. All that is required is that evidence exists whereby this court can say that the trial judge acted as a reasonable man in finding that the proof of the fact asserted is greater than a mere preponderance. We are of the opinion that the evidence meets such test.

So concluding, we deem it unnecessary for us to discuss the trial court's findings on the issue of title by adverse possession.

The judgment is affirmed. Costs to respondent.

CROCKETT, WADE, WORTHEN and HENRIOD, JJ., concur.