Reid D. BENCH and Alta M. Bench, his
wife, Plaintiffs and Appellants,

v.

Erma PACE, Defendant and Respondent.

No. 13929.

Supreme Court of Utah.

July 14, 1975.

7. 18 University of Florida L.Rev., 440.

Wayne L. Black and Richard C. Dibblee, of Rawlings, Roberts & Black, Salt Lake City, for plaintiffs and appellants.

John P. Kennedy and John S. Boyden, of Boyden & Kennedy, Salt Lake City, for defendant and respondent.

TUCKETT, Justice:

Plaintiffs initiated these proceedings seeking specific performance of an option to purchase a farm owned by the defendant in Duchesne County, State of Utah. The defendant counterclaimed and asked the court to reform the instrument entered into by the parties. The district court entered a decree reforming the instrument in question and further ruled that the plaintiffs did not exercise the option in accordance with its terms, and restored the property to the defendant and awarded a money judgment. The plaintiffs here are seeking a reversal.

During the month of September 1965, the plaintiffs and the defendant entered into negotiations which culminated on September 8, 1965, in the execution of an instrument whereby plaintiffs leased the farm from the defendant. The written instrument reserved rentals for the home on the farm as well as a separate rental for the farm lands. The instrument also contains the following option: "The owners have agreed to lease and subsequently sell to the buyers that certain 120 acres irrigated farm," and other provisions, setting forth the purchase price, a down payment, and annual payments to be made by the plaintiffs. The instrument contained no provisions relating to the oil and mineral estate.

After the preliminary discussions concerning the lease and option, the plaintiffs employed an attorney to draft the instrument. Several years prior to the execution of the instrument the defendant had leased the oil and mineral rights to parties not involved in these proceedings. During the preliminary discussions prior to the signing of the agreement defendant testified that she informed the plaintiffs that the oil and mineral rights in the property were not included in the option to buy, and that she intended to retain the same. Based upon this testimony, as well as the testimony of other independent witnesses, the defendant seeks to have the instrument reformed so as to include a reservation of the mineral estate in herself. The testimony adduced for and on behalf of the defendant shows that the plaintiffs were agreeable to the reservation, and had stated that they were not interested in the oil and mineral rights. While the testimony relating the verbal understanding to oil rights is disputed by the plaintiffs, nevertheless during the years 1968 and 1969 the plaintiffs approached the defendant and offered to purchase from her a fractional interest in the mineral estate. Based upon the evidence introduced at the trial on behalf of the plaintiffs and the defendant, the court found that the defendant had shown by clear and convincing evidence that at the time of the execution of the lease option neither party intended to create any interest in the plaintiffs to the mineral estate.

On May 22, 1967, Reid D. Bench and Alta M. Bench, the plaintiffs, and Erma Pace, the defendant, entered into an agreement which extended the term of the lease and the time for the exercise of the option

therein contained for a period of five additional years. The extension made the date of expiration of the option September 8, 1973. On January 8, 1971, the plaintiffs attempted to exercise the option by tendering to the defendant the sum of $2,000. At that time the plaintiffs were delinquent in the payment of rent reserved under the lease, and these amounts were also tendered.

A dispute arose among the parties as to the terms of the sale agreement, and the plaintiffs refused to sign an agreement prepared by the defendant's attorney, which provided for an escrow, with the deed to be delivered by the escrow upon payment in full of the purchase price. This disagreement was not resolved, and the $2,000 was returned by the defendant to the plaintiffs. The defendant also notified the plaintiffs that she would not complete the sale, and that the plaintiffs could remain in possession under the lease.

During the summer of 1972, the plaintiffs executed ratification of an oil lease which had been entered into by the defendant and third parties. Thereafter the plaintiffs initiated these proceedings for specific performance and other relief.

■ The plaintiffs contend that the court below erroneously admitted evidence which would tend to vary the terms of the written purchase agreement.

The plaintiffs also claim that the integrated contract was complete, unambiguous, and that oral testimony tending to show a reservation not included within the terms of the agreement was in violation of the Statute of Frauds, Section 25–1–1, U.C.A.1953, as amended. A prior decision of this court [1] dealt with an identical problem in the following language:

Appellant is in error in her contention that testimony concerning the mistake was inadmissible because it varied the terms of a written contract. If such a contention could be sustained then the equitable theory of reformation of contracts would not apply to written instruments. The right to reform is given, at least in part, so as to make the written instrument express the bargain the parties previously orally agreed upon. When a writing is reformed the result is that an oral agreement is by court decree made legally effective although at variance with the writings which the parties had agreed upon as a memorial of their bargain. The principle itself modifies the parol evidence rule.

Williston dealt with the problem in the following way:

The right of reformation, wherever allowed, is necessarily an invasion or limitation of the parol evidence rule, since when equity reforms a writing, it enforces an oral agreement at variance with the writing which the parties had agreed upon as a memorial of their bargain.

This limitation is necessary to work justice, and there seems no more reason to object to it in case of reformation than in case of rescission for fraud or for mistake. It is understood that to warrant reformation or rescission, the court must be persuaded by the clearest kind of evidence that a mistake has been made by both parties, or in some cases by one, or that some other basis exists upon which relief should be granted.[2]

A number of decisions of this court have dealt with the problem of reformation of contracts and conveyances based upon mutual mistake.[3]

■ The plaintiffs also claim that the statute of limitations, Section 78–12–25 and Section 78–12–26(3), Utah Code Annotated

---

1. Sine v. Harper, 118 Utah 415, 222 P.2d 571.

2. Williston on Contracts, Vol. 13, 3d Ed. Sec. 1552; see also Strout Western Realty Agency, Inc. v. Broderick, Utah, 522 P.2d 144.

3. Sine v. Harper, supra; Peterson v. Eldredge, 122 Utah 96, 246 P.2d 886; Naisbitt v. Hodges, 6 Utah 2d 116, 307 P.2d 620; Intermountain Farmers Association v. Peart, 30 Utah 2d 201, 515 P.2d 614.

1953, bar the defendant's right to seek reformation of the lease agreement, and that she was also guilty of laches in claiming the right to reform. The defendant had leased the mineral estate to third parties, which fact was well known to the plaintiffs, and the leasing arrangement was ratified by the plaintiffs. The defendant's ownership of the mineral estate was not threatened until these proceedings were initiated, and in view of that circumstance we are of the opinion that the statute of limitations and the doctrine of laches do not apply.

■ We are of the opinion that the trial court's finding that a reservation of the mineral estate in the lease option agreement was omitted by mutual mistake of the parties based upon clear and convincing evidence is supported by the record. The omission of the reservation was a mistake of fact rather than a mistake of law inasmuch as in view of all the circumstances it appears the omission was an oversight on the part of scrivener and the parties to the contract, and the conduct of the plaintiffs clearly shows that they made no claim to the mineral estate until shortly before this suit was initiated.

The trial court further found that the plaintiffs have acquiesced in the return of the $2,000 down payment and their remaining possession under the lease until after the option had expired in accordance with its terms, their rights to exercise the option terminated. The record supports this finding.

■ The plaintiffs have failed to pay the rentals due under the lease from and after October 30, 1973, and their remaining in possession of the premises put the plaintiffs in unlawful detainer and the court's finding on this issue was correct.

The decree and judgment of the court below is affirmed. Respondent is entitled to costs.

HENRIOD, C. J., and CROCKETT, J., concur.

ELLETT, Justice (dissenting).

I dissent.

I agree with the statements in the main opinion about reformation in cases of *Mutual Mistake of Fact*. However, in this case there was no mutual mistake of fact. The defendant herself did not even have a mistake of fact. She testified thus:

Q. You were aware very early in the proceedings of the failure to have the reservation of oil and gas rights in the document, were you not?

A. I was aware that it should have been in there before I even signed it.

It thus seems obvious that Mrs. Pace knew that the reservation was not in the lease-option agreement, although she knew it should have been there.

Since the signing of the document in question, gas and oil have been discovered in the vicinity, and mineral rights have become valuable, hence the desire to reform the agreement.

The fact that prior to the exercise of the option to purchase Mr. Bench made inquiry as to possibility of buying some mineral rights in the land is of no consequence. Had he been able to secure mineral rights at a satisfactory price, he might have been satisfied and would, therefore, not need to exercise the option. His effort to purchase a part of the mineral rights while they were owned by Mrs. Pace cannot be taken as evidence that he did not think they would go with the land in case he exercised the option. To me it only proves that he was more interested in the minerals than he was in the surface rights of the land.

I would reverse the judgment and direct the trial court to award specific performance of the option contract. I would also award costs to the appellants.

MAUGHAN, J., concurs in the dissenting opinion of ELLETT, J.