**MAYTIME MANOR, INC., a Utah Corporation, Plaintiff and Respondent,**

v.

**STOKERMATIC, INC., and Reuel J. McPhie, Defendants and Appellants.**

No. 15975.

Supreme Court of Utah.

June 19, 1979.

Reading, Snow & Halliday, John Spencer Snow, Salt Lake City, for defendants and appellants.

Roy G. Haslem, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendants appeal from judgment granted plaintiff on its complaint to reform a lease by the District Court for Salt Lake County, sitting without a jury. Affirmed. Costs to plaintiff.

Defendants began negotiating with plaintiff's agent, Lenord Sproul, in the fall of 1971 to purchase or lease the Maytime Manor Convalescent Center in Salt Lake City. On September 20, 1972, defendants submitted to Mr. Sproul a written proposal to lease the convalescent center. Before he submitted the proposal to plaintiff's board of directors, several changes were handwritten into the proposal and initialed by Defendant McPhie in order that the proposal conform to the understanding between McPhie and Sproul. The proposal contained an escalation clause increasing the monthly rent over the flat $9,800 per month amount for the first five years to include an additional percentage equal to the increase in the cost of living from the inception of the lease, limited, however, to a monthly increase of $635. On September 20, plaintiff's board of directors accepted the proposal, expressly noting the escalation clause in its minutes.

On September 26, 1972, Mr. Sproul, Defendant McPhie and Robert Henry and John Margetts, also representatives of Defendant Stokermatic, met to execute the lease, which defendants had prepared. Plaintiff contends the lease was signed in the convalescent center's office in the presence of one Leta Christensen, who notarized it; defendants argue it was signed at the Salt Lake Athletic Club and that Mrs. Christensen was not present. The lease did not contain the escalation clause included in the September 20 proposal. Plaintiff asserts that to correct that deficiency Defendant McPhie stapled the proposal to the front of the lease, thereby incorporating it into the lease. Defendants testified that the proposal was part of the negotiations only and not attached to or incorporated into the lease.

In November 1973, Defendant Stokermatic, then in possession of the convalescent center under the lease, submitted a settlement of accounts to Leta Christensen who accepted it on behalf of plaintiff in accordance with the proposal letter dated September 20, 1972. In November 1973, Leta Christensen was employed by Defendant Stokermatic as a bookkeeper, a position she had also held under plaintiff's management of the facility. At trial, defendants claimed the accounting was submitted not on the basis of the proposal letter, incorporated into the lease, but in accordance with an oral agreement between the parties.

In the fall of 1976, Mr. Sproul, on the advice of his attorney, requested from Defendant McPhie an addendum to the lease setting forth the escalation clause. Defendant McPhie advised Sproul that he would not sign an addendum because Medicade would not reimburse defendants more than the base lease rate of $9,800 per month. In 1977, plaintiff demanded that defendants honor the rental escalation clause. When defendants refused, this suit was brought to reform the lease.

All issues were resolved prior to trial except one, viz., whether the escalation clause in the proposal letter of September 20, 1972, was incorporated by reference in the lease. The District Court found and concluded the lease was executed on Sep-

tember 20, 1972, and that the parties intended at that time that the proposal letter of September 20, 1972, be incorporated into the lease, that subsequent to the execution of the lease defendants acted consistently with the provisions of the proposal letter concerning the accounting, and that the escalation clause was incorporated into the lease.

Defendants attack those findings and conclusions, claiming that reformation of a lease requires clear and convincing evidence of fraud, misrepresentation or mistake, and that the evidence presented to the District Court was neither clear nor convincing and was, in fact, so contradictory and disputed that it failed to show an agreement, and that the lease made by the parties superseded the terms in the proposal letter.

 There is some dispute on appeal as to whether the standard of this Court's review on appeal concerning the judgment to reform must be supported by a preponderance of the evidence or by clear and convincing evidence in this equitable action. Of course, to reform the lease, the District Court below must have found, upon clear and convincing evidence,[1] that the parties intended the lease to include the escalation clause. And, for this Court to affirm the District Court's judgment, it need only conclude that the evidence presented to the District Court does not clearly preponderate against the findings of that Court.[2]

We now consider the findings and the evidence. The finding that the lease was signed on September 26, 1972, at the convalescent center with all signators present is corroborated by the testimony of Mr. Sproul and Leta Christensen, who notarized the signatures. Defendant McPhie's testimony that the lease was signed at the Athletic Club with all parties present, but without Mrs. Christensen, was contradicted by his deposition testimony.

The Court's finding that the proposal letter of September 20, 1972, was stapled to the front of the lease to incorporate it was testified to emphatically by Mr. Sproul. He had negotiated the lease on behalf of plaintiff and stated that he would not have signed it unless it included the escalation clause found in the proposal letter, and that Defendant McPhie attached it. Mrs. Christensen testified that it was attached to the lease before it was signed and notarized. Defendants' witnesses testified that it was not attached. The proposal letter, prepared by defendants and including the escalation clause, was accepted by plaintiff's board of directors, as evidenced by the minutes of the meeting, and when Mr. Sproul returned it to Defendant McPhie for preparation of the lease, Mr. Sproul had noted on it "The above offer is accepted," and had signed it in his capacity as representative of plaintiff. Further, defendants acted pursuant to another provision in the proposal, also not included in the original lease, a year after the execution of the lease when they rendered a settlement of accounts to plaintiff.

 Upon review of the evidence in this case, although it is conflicting, as in many cases, we cannot—and do not—say that it clearly preponderates against the District Court's judgment. Defendants also argue that the lease supersedes the proposal letter because the latter was merely negotiation, and that the exclusion of the parol and other extrinsic evidence admitted by the District Court to ascertain the intent of the parties, was error. It should be noted that defendants did not object to the introduction of evidence of the parties' intent at trial, and indeed, argued for their interpretation of that evidence. Also, this Court held in *Jensen v. Manila Corporation of The Church of Jesus Christ of Latter-Day Saints*[3] that parol evidence was admissible in an action to reform a contract.

We note that the concurring opinion of Justice Hall states that the parties to this lawsuit sought the wrong remedy, viz., reformation. It would have been very difficult for the plaintiff to sue to interpret the lease because, as signed, it did not contain the escalation clause. The District Court found, as a matter of fact, and based upon clear and convincing evidence, that the proposal letter was attached to the lease and

1. *Sine v. Harper*, 118 Utah 415, 222 P.2d 571 (1950); *Naisbitt v. Hodges*, 6 Utah 2d 116, 307 P.2d 620 (1957); *Ingram v. Forrer*, Utah, 563 P.2d 181 (1977).

2. *Nokes v. Continental Mining & Milling Co.*, 6 Utah 2d 177, 179, 308 P.2d 954 (1957); *Pagano v. Walker*, Utah, 539 P.2d 452, 454 (1975).

3. Utah, 565 P.2d 63, 64 (1977). Also, see *Sine v. Harper, supra*, Note 1, 118 Utah at 428, 429, 222 P.2d at 578.

became incorporated into it. To assume that the lease and its attachment, as a matter of law, constitute the total agreement without the benefit of factual determinations made by the District Court, begs, it seems to us, the very question involved herein.

CROCKETT, C. J., and MAUGHAN, J., concur.

HALL, Justice (concurring in result).

I would affirm the trial court, but for different reasons than as stated by the majority.

Despite the indiscriminate use by the parties and the court below of the term "reformation," I do not deem this to be a case where equity need be employed.

The record supports the trial court's findings that there was a manifestation of mutual assent that the escalation clause was a part of the contract *from the beginning*, and the court could have so held without determining that the clause *be added*.

This is simply a case of determining *what the contract was*, like for example, determining that, *as a fact*, a page has been misplaced or fallen out of an integrated contract, and that *it should be put back in*.

I am of the opinion that, as a matter of law, the contract, with its attachment, is the integrated document binding on the parties.

STEWART, J., concurs with the views expressed in the opinion of HALL, J.