PETERSON et al. v. ELDREDGE.

No. 7768.   Decided August 5, 1952.   (246 P. 2d 996.)

*Ben E. Roberts,* Salt Lake City, for appellant.

*McCullough, Boyce & McCullough,* Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a judgment reforming a written real estate contract to correspond with the intentions of the parties as to a boundary line, the legal description of which plaintiff sellers alleged to be erroneous because of mutual mistake of fact. The judgment reforming the contract is affirmed, each party to bear his own costs on appeal.

In 1935, plaintiff Peterson's mother bought a 2-story home situate in Salt Lake City on the corner of 7th Avenue and "D" Street, respectively south and west of the property,

whose legal description called for a depth of 101 feet. In 1938 she bought a duplex immediately north of and adjacent to the first parcel, whose description called for a frontage of 64 feet on "D" Street. Titles to the two parcels thus were merged in her. When she acquired the first parcel, an old wooden fence was in place at the rear, appearing to be the dividing line between the properties. Actually it encroached on the duplex property by 11′ 9″. This footage had all the appearance of being part of the back yard of the large house. It was planted to lawn, contained an immovable sprinkler system, and vines and flowers were growing alongside and inside the fence. So far as can be determined from the record, the previous owners of the duplex apparently acquiesced in such use, though their title included it.

In 1944, the mother sold both parcels to her son, the plaintiff herein, who, along with his wife, testified that they always believed the fence to be the boundary between the two lots. He and his family moved into the large house, continued to cultivate the lawn and shrubs, and maintained the sprinkler system. Shortly after occupying the premises, he enclosed the yard with a 4½ foot steel wire fence, replacing the old wooden one. This enjoyment continued undisturbed for 7 years, and until 2 years after he had sold the duplex property to defendant. In 1949, both properties were listed with a realtor for sale. The listing cards of each showed estimates of, but considerable inaccuracy as to the number of feet bounding the properties. Both were advertised for sale by street number only. In response to the ad, defendant examined the duplex in the presence of plaintiff and the real estate man, returned a second time with her daughter, and signed an earnest money agreement which contained the street number but no legal description. A week or so later she signed an uniform real estate contract of purchase, in which the realtor, who prepared it, described the property by metes and bounds instead of by street number. Plaintiffs contend that the description was erron-

eous since both parties had in mind the fence as the dividing line rather than a line 11′ 9″ south thereof.

The contract was forwarded for signatures to plaintiffs who then were residing in Blanding, Utah. On resuming their residence in Salt Lake. City about 3 months later, and in response to an inqury from defendant, plaintiff told her the fence was on the property line. Defendant then asked if she might buy 3 to 6 feet south of the fence, but plaintiff replied that he did not have enough room in the back yard as it was. Plaintiff continued to cultivate the yard with lawn and shrubs, and to maintain the wire fence throughout the remainder of 1949 and 1950. Defendant, in attempting to re-finance the property in January 1951, learned for the first time that the description in the contract called for 11′ 9″ south of the fence. She notified plaintiff of this fact and at her request, before seeking counsel, he removed the fence. Such removal still failed to encourage flight by. the dove of peace between the two properties.

Plaintiffs testified that they believed the fence to be on the property line, and that they would not have sold the major portion of what they believed to be their back yard, had they known the description covered anything south of the fence,—that they intended to sell only that which was north of the fence. Such testimony is undisputed and seems worthy of belief, since the physical facts and even the testimony of defendant herself seem to substantiate it, justifying the conclusion that there was a mutual mistake. Without the strip, plaintiffs would have a back yard less than 3 feet deep. At the time of sale, no one seemed concerned about or even mentioned the fence. Defendant's testimony itself inspires the conclusion that she thought the fence was the boundary. She testified: That when she bought in March, 1949, a wire fence separated the property from the house to the south; that she became interested for the first time in the boundary in January 1951, when she tried to re-finance the duplex; that Peterson told her that the fence was the boundary about 3 months after she purchased

the property, when he returned from Southern Utah; that when "I asked him to sell me from 3 to 6 feet"; that "I hadn't considered the lot at all" and "I have paid no attention to the property line"; that she didn't consider the property line ran to the steps of plaintiffs' house; that "the thing that entered my mind wasn't the property but the size of the rooms"; that the property used by plaintiffs south of the fence "was inside of *their fence"; that she had no reason to believe the property extended south of the fence "because it was represented otherwise";* that when she signed the contract she paid no attention to the frontage she was buying; that there was an immobile sprinkling system installed in the lawn used by plaintiffs during 1949-50; *that it was only after discovery that the legal description included property south of the fence that she made any claim to the property south of the fence;* that at the two times she looked at the duplex, nothing was said about the size of the lot; that Peterson "told me himself that he had planned on putting a double garage on that piece of property the summer before, then decided there wasn't room", and "it would take up the children's play yard."

Under such circumstances, it takes little imagination reasonably to conclude that had the description in the contract placed the boundary on the fence line this litigation would not have resulted. Counsel for defendant, who most correctly and expertly advised defendant as to title and dimension, just as expertly has wrung from this case in her defense everything that could be expected in a rather hopeless situation, where even many of the authorities assigned in defense are not at all disconsonant with the decision here.[1]

We recently decided a similar case, in which reformation ordered by the lower court was affirmed.[2] We cite that

[1]*George* v. *Fritsch Loan & Trust Co.,* 69 Utah 460, 256 P. 400; *Cram* v. *Reynolds,* 55 Utah 384, 186 P. 100; *Nordfors* v. *Knight,* 90 Utah 114, 60 P. 2d 1115.

[2]*Sine* v. *Harper,* 118 Utah 415, 222 P. 2d 571.

as controlling here, to the effect that a written contract will be reformed to express the agreement of parties where, as here, the proof of mistake is clear, definite, and convincing, where he who seeks reformation is not guilty of inexcusable negligence in executing the same and makes timely application for the relief sought. Plaintiffs there, as here, employed an amanuensis in detailing the description. They executed the same at a remote distance and instituted proceedings to correct the mistake within a short time after its discovery. We believe any carelessness on their part was excusable so as not to preclude reformation even under the authorities cited by defendant.[3] Each case must rest on its own facts, including the mistake itself, the mutuality thereof, any negligence attributable to him who causes it, the initiative taken in its correction, and the prejudice, if any, resulting to him against who relief is sought. Here we believe and hold that all of these things considered, the trial court did not err in reforming the agreement.

WOLFE, C. J., and WADE, McDONOUGH and CROCK-ETT, JJ., concur.

---

[3] *George* v. *Fritsch Loan & Trust Co.*, supra.