## McMAHON v. TANNER.

No. 7673. Decided August 8, 1952. (249 P. 2d 502.)

See 76 C. J. S., Reformation of Instruments, sec. 28. Negligence as affecting right to reformation of instrument. 45 Am. Jur., Reformation of Instruments, secs. 78-81; 45 A. L. R. 700.

*Herbert B. Maw,* Salt Lake City, for appellant.

*Hammond & Hammond, Therald N. Jensen,* Price, for respondent.

McDONOUGH, Justice.

This is an appeal from a lower court judgment ordering the reformation of two deeds to conform with an agreement found by the court to have existed before the deeds were executed.

Plaintiff and defendant are brother and sister who inherited a large parcel of land from their brohter John P. McMahon. This land was sold by plaintiff, as administrator of John's estate, with the approval of defendant, to the Kaiser-Frazier Parts Corporation would re-sell two specified four acre tracts—one to the plaintiff and the other to the defendant. These two tracts were separated by a third parcel of land which belonged to a disinterested party. The four acre tract bordering on the east boundary of this third parcel of land was designated the east tract and the tract adjoining the west boundary of the third parcel was called the west tract. In their natural state, the west tract was the more desirable piece of property. The agreement did not mention which party was to receive the east or west tracts.

Approximately one year after this sale, Edward W. Clyde, representing the Kaiser-Frazier Parst Corporation, conveyed the west tract to the plaintiff and the east tract to the defendant. Clyde prevailed upon the parties to agree as to which tract each would receive but upon their failure to inform him of their decesion, he assigned the tracts as above. The plaintiff obtained his deed from Clyde without comment or inquiry as to what tract it conveyed. Two weeks later, the defendant obtained her deed from Clyde, and upon inqury, was informed that she received the east tract. She protested, saying that she and plaintiff had agreed that she was to have the West tract. Clyde proposed that since the plaintiff evidently did not know what tract he received, she should contact him and clear any misconceptions then existing. In April, 1950, the plaintiff, believing that he owned the east tract, conveyed it by warranty deed to a third party, who commenced building a drive-in theatre upon it. In May, 1950, defendant noticed some construction upon the land, immediately recorded her deed, and waited until the improvements were completed approximately two months later before informing the theatre owners that she owned the land. In subsequent negotiations defendant refused to sell the land or reform the deeds, but demanded that she receive a portion of the theatre receipts. The lower court found that plaintiff and defendant had, prior to the execution of the two deeds, agreed that defendant was to get the west tract—the one she desired—and that plaintiff would take the east tract. It ordered reformation of the deeds to conform to the agreement so found.

Defendant attacks the judgment, assigning:

(1) That there was insufficient evidence of any agreement between the parties in relation to the transaction to justify a reformation of the deeds.

(2) That if any mistake were made, it was not a mutual mistake and hence furnishes no basis for reformation.

(3) That plaintiff is entitled to no relief in equity because the errors of which he complains were due to his own lack of diligence and could have been avoided through the exercise of ordinary care.

In support of her first assignment, defendant invokes the rule well settled in this and other jurisdictions that in order to obtain a decree reforming a written conveyance the fact necessary for allowance of the remedy shall be proved by clear and convincing evidence and not ■ by mere preponderance. *Sine* v. *Harper*, 118 Utah 415, 222 P. 2d 571, and cases there cited. She contends that the evidence with respect to the existence of an agreement between her and the plaintiff relative to the tracts to be conveyed to them respectively, does not meet this test. The contention cannot be sustained.

That appellant expressed a desire to obtain the west side is revealed by the record. On cross-examination she testified:

"Q. Now which side, at the beginning, which tract of land did you say you wanted? A. I told him that my choice would be on the west side.

"Q. The west side. And hoping that you would get it, you planted trees and shrubs on the west tract, is that correct? A. Well, I thought that, yes."

On direct examination her testimony was:

"Q. You have heard the testimony given that, by your brother, that he asked you to designate which tract you wanted? A. Yes.

"Q. And you said what? A. I told him I preferred the west side."

Appellant's husband testified that:

"Q. And you planted those trees (on the west side) after you knew that your wife had chosen that parcel? A. After she had chosen it, that's right."

And the plaintiff testified:

"A. Well, let Melissa (the defendant) make her choice. He, (Mr. Clyde) insisted that we should make the choice now and the choice was made at that time.

"Q. In his presence? A. In his presence.

"Q. Did he hear? A. I don't know about that. It was made in his presence.

"Q. But you didn't make, determine for yourself that he knew which piece you were to get and which she was to get? A. Well, that's what he said I did. But I don't know. He asked me, 'Is that OK with you Mac?' I said. 'Yes.' 'I gave her her choice and that is OK with me.'"

Plaintiff further testified that he told the defendant the west side was the side he would have chosen if he had had his choice.

That something more than an expression of preference was made is revealed by the following testimony: Mario Marchino, one of the men interested in the theatre, testified that when they visited the appellant in regard to purchasing her interest in the east tract, she told them:

"Although that her and her brother, B. W. McMahon, had agreed that she was to take the west parcel and B. W. the east parcel, why now that the theatre was on the west (east) parcel that naturally that was the most valuable and that was the land she wanted."

Phillip Turner, also interested in the theatre, testified that at the meeting with appellant she said:

"* * * that she and her brother Ben had agreed on which piece of ground was to belong to who and she had chosen the west parcel and he the east parcel. She also said at that time that she thought that it was better for him to have the east parcel because the electricity was there at the corner of that piece of ground where it would be easy for him to hook on and later when she decided to build she would put the electricity down to her place."

Mr. Bernard W. Cline, who owned the third interest in the enterprise, testified as to the conversation with appellant as follows:

"Q. Was anything said as to the respective ownership of the east and west parcels? A. Yes * * * and that there had been a definite agreement of who was to have what piece of land, and I believe even they mentioned contacting the lawyers in Salt Lake City concerning the mistake that had been made.

"Q. Did they say what mistake had been made? A. Yes, she said that they were to receive the west, I don't want to get confused here, but they were to receive the west part and Woody was to receive the east part."

Mr. Edward W. Clyde, the attorney who executed the deeds and who is an entirely disinterested witness in this case, testified that when the defendant came for her deed, and learned that it described the east tract said:

" 'This the wrong piece,' and I said, 'What do you mean it is the wrong piece,' and she said, 'Ben and I agreed that he would take this one and that I would get the other one, * * *.' 'Well Ben and I agreed that he get this piece and I would get the other one.' Now I said, 'Mrs. Tanner, you mean agreed or you mean just talked about it.' And she said, 'We understood that was the way it was to be,' and I don't remember which one of them she said, but she said one of us planted some trees or plants on the piece we are to get, and I am getting the wrong piece. She requested me to straighten it up and I told her that I couldn't, that the deed was already delivered to Ben and I told her that if she contacted Ben that he would straighten it up. And she said, 'No, he wouldn't, he has tricked again.' I told her that I didn't think Ben knew which piece he had, that I hadn't shown him on the plat. But I thought if he contacted her it would be straightened out again. And she said, 'No, he has just tricked me again.' And paid the $100.00 and took the deed."

Mr. Clyde also testified that upon discovery of the commencement of construction, the defendant phoned him and:

" 'We discussed the nature of the improvement. She told me it was a theatre; that she hadn't consented to them going on there to build the theatre,' and I asked her then if they had ever straightened out the deed with Ben. And she said 'No she hadn't' and she again said that she didn't know what to do about it and I again said, 'Well,

you remember that you wanted the other piece and that you said you and Ben had agreed that you'd get this piece and he'd get the other one. Now this is your chance to get the piece that you wanted, just try him,' and she said, 'Well, I don't know whether I want to do that or not, I will think about it.' "

The record fully supports the finding of an agreement between the parties. The testimony indicates that more than a mere expression of desires existed. No doubt remains as to the intention of the parties and no evidence in the record sharply conflicts with this conclusion. The evidence meets the criterion laid down in the case of *Greener* v. *Greener,* 116 Utah 571, 212 P. 2d 194, 204:

"That proof is convincing which carries with it, not only the power to persuade the mind as to the probable truth or correctness of the fact it purports to prove, but has the element of clinching such truth or correctness. Clear and convincing proof clinches what might be otherwise only probable to the mind."

Consequently, we cannot disturb the lower court's finding in this respect.

Defendant's second contention is that even if an agreement was reached between the parties, the defendant knew she was getting the east tract at the time the deed was delivered to her, and hence there was no mutual mistake, therefore no grounds for reformation. This argument will not bear analysis. The mistake in the conveyances was made by the scrivener of the grantor. He evidently because of failure on the part of both parties to definitely inform him with respect to their agreement, either supposed that no agreement had been reached or that the parties were indifferent as to which tract each received. He drew conveyances contrary to such agreement. At the time of the execution and delivery of the deed to the plaintiff, the mistake of the parties was in assuming that the scrivener knew of their intention relative to the respective tracts. That the plaintiff assumed that the

scrivener did know of such inention is evident from his testimony and from his acts and conduct. He took the deed to the west tract without making any inquiry as to which piece of land was therein described. That he assumed it to be the east tract, is borne out by the evidence produced relative to the prior agreement of the parties reached in the scrivener's office. It is further borne out by the fact that although his deed described the west tract, he thereafter entered into an agreement to sell what he supposed was the east tract.

Defendant at the time she received her deed and discovered that it was to the east tract, stated that the conveyance was contrary to the agreement of plaintiff and defendant, and though she insisted that she had been tricked, she was in effect immediately informed by Mr. Clyde that it was a mistake, that is, that he, Mr. Clyde was unaware of the fact that they had made an agreement with respect to which tract each was to receive. At the time defendant visited the office of Mr. Clyde to receive her deed, the mistake in writing had already been made. The tract of land which she was supposed to receive, pursuant to her understanding with the plaintiff, had already been conveyed to the latter. The defendant arguing this assignment confuses the mistake upon the part of the plaintiff in assuming that the deed to him described the east tract whereas it described the west tract, with the mistake upon which reformation was granted, namely, the mistake on the part of the scrivener in failing to make the writing express the intention of the parties. The fallacy of the argument relative to lack of mutuality is readily seen by "putting the shoe on the other foot." Thus, had the defendant, upon learning that the west tract had been conveyed to the plaintiff, whereas pursuant to their understanding it should have been conveyed to her, sought reformation of the conveyances, it would be a strange application of the equitable principle here involved to say that her right to reformation could be defeated by plaintiff asserting as a defense—were it the

fact—that he knew at the time of the conveyance to him that he had received the tract that they both thought more desirable but which he had agreed be conveyed to her.

But if the execution and delivery of the two conveyances be regarded as but a part of the single transaction whereby the grantor of both parties carried out his obligation to them, and hence was not complete until execution and delivery of the second conveyance, and the mistake be regarded as not mutual—though as we have stated above we think such contention will not bear analysis— nevertheless, the defendant's second assignment must be overruled. The principle applicable thereto is well stated in the case of *Spirt* v. *Albert,* 109 Conn. 292, 146 A. 717, 720:

"where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding."

But defendant asserts that the hand of the court should be stayed because of the lack of diligence and due care on the part of the plaintiff in discovering the mistake. This contention must likewise be overruled.

The type of negligence which will preclude a party from securing equitable relief of the nature here demanded is thus stated in Pomeroy's Equity Jurisprudence, 4th Ed., Sec. 856:

"As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaininy party's own neyligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of the legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must

depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby."

When plaintiff accepted delivery of the deed to the west tract, he did so on the assumption that Mr. Clyde was aware of which tract should be conveyed to each of the parties. He accepted delivery of the deed on the further assumption that Mr. Clyde, having such information, would make the deeds in accordance with the intention of the parties. True, he neglected to make inquiry as to which tract his deed described. The two tracts were of equal area and were so similar in shape as to require, in the absence of such inquiry, special effort in plotting their exact location. Furthermore, his lack of care violated no legal duty which he owed to the defendant. Indeed, it seems reasonably certain from the record that had she, on discovering the mistake, informed plaintiff of the mistake, mutual deeds could have and would have been executed to correct the error. His lack of diligence and due care caused no change of position upon the part of or any injury to the defendant. The lower court did not err in rejecting defendant's negligence plea.

The decree of the lower court is affirmed. Costs to respondent.

WOLFE, C. J., and WADE, CROCKETT, and HENRIOD, JJ., concur.