MOUNTAIN STATES TELEPHONE AND TELEGRAPH, Plaintiff and Respondent,

v.

Dallan L. SOHM, an individual; Keith E. Sohm, an individual; Becky K. Sohm, an individual; and Bryan Terry White, an individual, Defendants and Appellants.

No. 19605.

Supreme Court of Utah.

May 13, 1988.

Keith E. Sohm, Salt Lake City, for defendants and appellants.

Floyd A. Jensen, Salt Lake City, for plaintiff and respondent.

HOWE, Associate Chief Justice:

Defendants Dallan L. Sohm and Keith E. Sohm appeal from a judgment of the district court holding them liable on their personal guarantees for telephone services furnished by plaintiff Mountain States Telephone and Telegraph to a corporation with which they were associated.

In February 1979, Career Concepts, Inc., entered into a "Tela Lease" for PBX switching equipment with plaintiff. The lease provided that it could be terminated before the end of its term by the lessee upon sixty days' written notice and the payment of an early termination charge, the amount of which would depend on the actual termination date. The corporation encountered financial difficulties, and the president who had signed the lease resigned, leaving defendants Dallan Sohm and Bryan Terry White to continue the corporate operations. Acting as legal counsel for the corporation, defendant Keith Sohm (father of Dallan) notified plaintiff by letter on October 12, 1979, that Career Concepts was terminating its lease, requested removal of the equipment, and advised plaintiff that no payments would be made under the lease after November 1, 1979. Plaintiff responded, informing Career Concepts that the lease would terminate on December 15, 1979, sixty days after its receipt of the letter, that an early termination charge of $16,127.77 would be imposed, and that all telephone service would be disconnected on November 9, 1979, if $30,000 of past due amounts were not paid.

On November 9, Dallan Sohm, Keith Sohm, and Bryan Terry White met with representatives of plaintiff to discuss arrangements for payment of the arrearage and for continuation of the telephone service necessary for the operation of the corporation. Plaintiff's representatives requested personal guarantees of payment of charges for future services as a condition for continuation of telephone service. Guarantees were also sought for past due charges, but the three men stated that they were reluctant to guarantee those charges. They left the meeting with several printed guarantee forms which the plaintiff furnished. The forms were to be filled out, signed by defendants and their wives, and then returned to plaintiff.

According to Keith Sohm, he advised Dallan and White to write on the guarantee forms the words "For future amounts only" before signing because he thought the printed form was not entirely clear. Becky Sohm (wife of Dallan Sohm) signed one of the guarantee forms as it was printed without any addition. Keith Sohm and White signed their forms, dated them December 14, 1979, and made the handwritten notation thereon, "This Guarantee is for future bills only." Dallan Sohm delivered these three signed forms to plaintiff and signed his form in the presence of Linda Tsoufakis, plaintiff's business office manager. It was dated December 7, 1979, and he made a handwritten notation on the form that "The guarantee is for past amounts only." Plaintiff thereafter continued telephone service to Career Concepts, Inc. It discontinued a portion of the service in January of 1980 and discontinued the balance of its service in May of 1980. A charge for early termination of the lease was imposed. Plaintiff brought this suit against the four guarantors on their guarantees. However, it sought to recover only from Dallan charges accruing before the date of his guarantee.

Dallan Sohm answered plaintiff's complaint, interposing the defense of mutual mistake and contending that he meant to write on his guarantee form "for future amounts only," in accordance with the ad-

vice given him by his lawyer, but he became confused and instead wrote "for past amounts only." However, the trial court found that he had not proved mutual mistake by clear and convincing evidence and held him liable for $31,632.95 which accrued prior to December 7, 1979, the date of his guarantee. The court found Keith Sohm liable for $1,673.90 which had accrued after December 14, 1979, the date of his guarantee. Becky Sohm and Bryan Terry White were dismissed from the lawsuit and are not parties to this appeal.

Defendants Dallan Sohm and Keith Sohm appeal, contending that (1) the judgment of the lower court is unenforceable in that plaintiff's counsel did not comply with rule 2.9(a) and (b) of the District and Circuit Courts' Rules of Practice, (2) the personal guarantee signed by defendant Dallan Sohm for "past amounts only" is unenforceable as a mutual mistake and the resulting contract is ambiguous, and (3) the personal guarantee signed by defendant Keith Sohm for "future amounts only" did not make him liable for early termination charges under the lease.

### I.

Rule 2.9 of the Rules of Practice in the District and Circuit Courts requires counsel for the party obtaining a court ruling to file within fifteen days a proposed order or judgment in conformity with the ruling. Copies are to be served on opposing counsel before the original is presented to the court for signature. Five days are allowed for objections by opposing counsel. In the present case, plaintiff's counsel submitted copies of proposed findings of fact, conclusions of law, and judgment to defendants' counsel within fifteen days. The latter communicated ex parte with the judge requesting revisions in conformance with the decision of the court as announced at the conclusion of the trial. The court instructed plaintiff's counsel to revise the documents. However, counsel did not do so but instead filed them with the court unchanged, with the request that the judge make any desired revisions by interlineation. The originals were held by the judge for more than five days to allow further objections and were then signed with interlined changes.

Defendants contend that a second or revised draft should have been submitted to them for approval. A second or final draft of the documents was not prepared; however, defendants had notice through copies of correspondence that the judge agreed that revisions should be made in conformance with their objections. The court simply interlined the revisions in the originals of the copies which had been timely mailed to defendants; there was no violation of rule 2.9 by plaintiff's counsel.

Defendants additionally complain that rule 4.5(a) of the Rules of Practice in the District and Circuit Courts, requiring notice of entry of the signed judgment to be served on the opposing party, was not timely complied with by plaintiff. While it appears that the rule was not followed, defendants were not prejudiced thereby. They took full advantage of their opportunity to file post-judgment motions in an effort to persuade the trial judge to change his decision. They also were able to timely file this appeal. Therefore, the error by plaintiff's counsel was harmless. Utah R.Civ.P. 61.

### II.

Defendants' second contention is that all parties who were present at the November 9, 1979 meeting orally agreed that defendants would personally guarantee payment of future services only and that when Dallan Sohm made the handwritten notation on his guarantee form that it was for past amounts only, a mutual mistake occurred for which reformation should be allowed. We have recognized in a number of cases that where an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties to the instrument and the other party learns of this mistake and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding. *Mabey v. Kay Peter-*

*son Constr.*, 682 P.2d 287 (Utah 1984); *Thompson v. Smith*, 620 P.2d 520 (Utah 1980); *Peterson v. Eldredge*, 122 Utah 96, 246 P.2d 886 (1952); *McMahon v. Tanner*, 122 Utah 333, 249 P.2d 502 (1952); *Sine v. Harper*, 118 Utah 415, 222 P.2d 571 (1950); Greene, *Mistake in the Utah Law of Contracts*, 7 Utah L.Rev. 304 (1961).

There is no dispute in the evidence that at the November 9 meeting, defendants were requested by plaintiff's representatives to personally guarantee the past due charges of approximately $30,000. According to the testimony of Keith and Dallan Sohm and White, they adamantly refused to do so. However, Keith further testified since Career needed telephone service to remain in business, that he proposed that defendants personally guarantee the ongoing charges, that he pointed out that this would give plaintiff a continuing customer with guaranteed payments, and that chief legal counsel for plaintiff, Kenneth Madsen, accepted the offer. Keith stated that in addition, Career was to make payments on past charges along with the current payments. Keith Sohm, Dallan Sohm and his wife, and Bryan Terry White and his wife were requested to sign a printed "guarantee of payment agreement" which plaintiff furnished.

It clearly and convincingly appears to us that the handwritten notation made by Dallan Sohm on his guarantee that it was for past due amounts only did not comport with the parties' previous oral understanding. Kenneth Madsen, who was at the November 9 meeting, did not testify at trial. The only testimony for plaintiff as to what occurred at that meeting came from Linda Tsoufakis, who was also present. While she disputed defendants' version of the oral understanding which was reached by the parties and maintained that plaintiff always wanted and intended to get a guarantee of payment of the past due charges, she stopped short of testifying that defendants ever agreed in the November 9 meeting to sign personal guarantees for the past due charges. She conceded that Dallan Sohm "was reluctant to sign something that guaranteed past amounts," and when pressed she admitted that she could not

remember whether he ever agreed to guarantee past due amounts. She finally stated that Dallan was "willing to sign the letter of guarantee."

Circumstantial evidence strongly supports defendants' version of the November 9 meeting. First, as they departed the meeting, the printed guarantees which they were given by plaintiff and asked to sign and return, by their very language, covered only future services. In pertinent part, the guarantee provided:

NOW, THEREFORE, THE UNDERSIGNED GUARANTOR, ... in consideration of the Telephone Company furnishing telecommunication services to customer, hereby absolutely and unconditionally guarantees to the Telephone Company the payment by customer of all charges for telecommunications services of all kinds whatsoever, at the service location, for which Customer *may become liable during the continuation of this Agreement.*

(Emphasis added.) Although Tsoufakis testified that this form was used by plaintiff to guarantee both future and past due services, the language clearly is limited to future services. Had an agreement been reached that defendants would guarantee both past due and future charges, plaintiff would have needed to furnish a differently worded guarantee. We believe that plaintiff recognized this when it sought in this action judgment against Becky Sohm for services rendered only after the date on the form she had signed, although she had made no handwritten addition to it.

Secondly, in January 1980, one month after the guarantees had been signed and returned to plaintiff, Linda Tsoufakis wrote and called defendants asking them to sign promissory notes for the amount of the charges which had accrued prior to the signing of their personal guarantees. At no time during those calls did she make any claim that she already had a guarantee from Dallan Sohm for past due amounts. Although plaintiff now maintains that it wanted a promissory note which was negotiable rather than relying on the non-negotiable guarantee of Dallan Sohm, plaintiff's

conduct in requesting the note is highly indicative that plaintiff did not know that Dallan had signed for past due amounts.

■ In sum, we find the evidence of mutual mistake as to Dallan Sohm's guarantee to be clear and convincing. The trial court's finding to the opposite is clearly erroneous and must be overturned. Utah R.Civ.P. 52(a). The testimony of Dallan Sohm, Keith Sohm, and Terry White that they orally agreed with Kenneth Madsen, chief counsel for plaintiff, at the November 9 meeting that they would guarantee future services only was not refuted by plaintiff in any way and is strongly supported by the circumstantial evidence which we have set out above. Plaintiff adduced no testimony that any defendant orally agreed to guarantee payment of past due amounts or that Dallan orally agreed to do something different than Keith or White had agreed to do. Plaintiff's testimony that it always intended and wanted such a guarantee is not evidence that such an agreement was actually struck. Nor does it aid plaintiff that Tsoufakis stated she "accepted" Dallan's guarantee as he presented it and assumed he "had a change of heart." This testimony bears out that she knew Dallan's written guarantee did not conform to the previous oral agreement. Plaintiff cannot defeat Dallan's right to reformation by quickly agreeing to his mistake when it operates in plaintiff's favor.

■ Plaintiff insists that Dallan Sohm was inexcusably negligent if he mistakenly wrote that he guaranteed past charges instead of future charges and that under our case law he is barred from obtaining reformation. Plaintiff relies upon *Thompson v. Smith,* 620 P.2d 520 (Utah 1980); *Naisbitt v. Hodges,* 6 Utah 2d 116, 307 P.2d 620 (1957); and *Peterson v. Eldredge,* 122 Utah 96, 246 P.2d 886 (1952). It is true that those cases contain the broad pronouncement that reformation will not be awarded to one who is inexcusably negligent, but as pointed out by the annotator at 81 A.L.R.2d 32, *Reformation—Effect of Negligence,* such statements should be interpreted in light of our decision in *McMahon v. Tanner,* 122 Utah 333, 249 P.2d 502 (1952),

where negligence was squarely in issue. In that case, we qualified the aforementioned rule and limited its application to only those cases where there is a violation of a positive legal duty or where the other party has been prejudiced by the mistake. We quoted with approval the following from *Pomeroy's Equity Jurisprudence,* § 856b (5th ed. 1941):

> As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaining parties' own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby.

(Footnotes omitted.) This qualifying statement by Pomeroy has been widely followed in the cases. *See* Annotation 81 A.L.R.2d 7, §§ 4, 5; 66 Am.Jur.2d *Reformation of Instruments* §§ 80, 81. It is clear in the instant case that Dallan owed no legal duty to plaintiff, and plaintiff has not been prejudiced by his mistake. It is not enough that plaintiff loses the benefit of what it thought was Dallan's change of heart. Dallan is entitled to reformation of the guarantee form which he signed to conform it to the previous oral agreement of the parties. He is liable only for future charges in accordance with the printed terms.

## III.

Defendants' third contention is without merit. The trial court found Keith Sohm liable for $1,673.90 for telephone service furnished to Career Concepts from and after December 14, 1979, the date on which he signed the guarantee and added the handwritten notation that he was guaranteeing future amounts only. The trial court also found that all charges for services furnished to Career Concepts accruing after December 28, 1979, were paid at the time of trial. Therefore, Keith Sohm was found liable for services furnished by plaintiff only from December 14, 1979, to December 28, 1979. A review of the record and billings of plaintiff shows no indication that early termination charges were imposed within that time frame. The trial judge determined the amount of Keith Sohm's liability based on one of plaintiff's exhibits which indicated termination charges accrued on May 15, 1980, and were not included in the $1,673.90 amount. In making revisions by interlineation to the judgment, the judge specifically changed the amount owed after December 14, 1979, from $16,673.93 to $1,673.90 and deleted language that the latter amount represented "early termination charges per paragraph 31 of the Tela Lease agreement, which was terminated effective December 15, 1979." The judgment against Keith included only service, equipment, and long-distance charges—the usual monthly charges he specifically guaranteed so that telephone service to Career Concepts would continue.

The judgment of the trial court against Keith Sohm is affirmed, but the judgment against Dallan Sohm is reversed, and the case is remanded to enter judgment against Dallan only for service after the date of his guarantee.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice (concurring and dissenting):

I concur in that portion of the majority opinion affirming the judgment against Keith Sohm. I dissent, however, from the reversal of the judgment against Dallan Sohm.

Under rule 52(a) of the Utah Rules of Civil Procedure, a trial court's findings of fact are not to be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." In the present case, Dallan Sohm admitted signing a document promising to pay past due amounts. He contended, however, that he had reached an agreement with the telephone company that he would guarantee future debts only. The telephone company disputed this version of events, contending that Sohm had proven, at most, a unilateral mistake. There was conflicting evidence as to whether the telephone company and Dallan Sohm had reached an agreement regarding past due amounts. The trial judge saw the witnesses and evaluated their credibility. The trial judge then concluded that the Sohms' version of the meeting of November 9th was not to be believed. Viewing the record evidence in the light most favorable to the findings of the trial court, *Scharf v. BMG Corp.*, 700 P.2d 1068, 1078 (Utah 1985), and having "due regard" for the "opportunity of the trial court to judge the credibility of the witnesses," I conclude that there is sufficient evidence to support the trial court's finding. For that reason, I would affirm the trial court's decision with respect to Dallan Sohm.

Like the majority, I too conclude, from a review of the cold record, that had I been sitting as the trial judge, I might have found the facts differently. But the trial judge watched the witnesses testify; he had the benefit of extraordinarily important evidence that is entirely unavailable to us—the demeanor of those who appeared before him. Because there is certainly some record evidence that supports the trial judge's findings, and because of the deference we must give to one who observes a witness's demeanor, I am compelled to vote to affirm the judgment below in its entirety.